Good morning. For clarification, I represent the appellants in the appeal numbers 17, 23, 78 and 17, 34, 43. There's actually in the first appeal, which is 23, 78, there's 43 appellants. In the second appeal, there's the same 43 appellants plus three others, but I'm really going to focus my initial arguments this morning on the first appeal, which is the appeal from the district court's order denying the motion to intervene that was filed in March of 2017 and denied on May 24th, 2017. As set forth in our briefs, there's a little bit of background with respect to sort of the procedures and the filings in the district court in this case in front of Judge Miller. The clients that I represent are part of a group of approximately 245 royalty owners who have filed separate lawsuits against the SECO defendants that were filed prior to the class certification order in the court below in front of Judge Miller. Those lawsuits were filed prior to November 2015, and in November 2015, we filed in the district court a notice of the filing of three separate lawsuits, which would have included as named plaintiffs in those three separate lawsuits each of the 43 class members. We gave notice, and I think it was November 4th, 2015 to Judge Miller that of the filing of those three separate lawsuits, which ended up, two of them ended up in federal court in front of Judge Miller, and then one of them stayed in state court. When was the class certification? The class certification was entered, I'm trying to remember, but it was after the November 2015 notice. I think the actual class certification order was in April of 2016, Judge Smith. After the class was certified, the plaintiffs, which included our group of the clients we represented, which was a group of 248 of the class members, we filed an initial motion to intervene for really two purposes. One purpose was to have the court rule that the earlier filing in November of 2015, in which we stated that all of these persons who had filed separate litigation, to have the court rule that that was a sufficient notice to opt out of any class that would be certified by Judge Miller. We had stated that in the notice, that we were giving notice of an intent to opt out of any class that might be certified. That was the first purpose of the first motion to intervene. The second purpose was to object to... Why wasn't there an appeal made of the certification? Of the class certification? We wouldn't have appealed from the order granting the plaintiff's motion to certify the class. We were trying to opt out of the class. We had given notice in November of 2015 that our clients... You wanted to get back in the class as an intervener? You wanted to get back in the case as an intervener? No, we wanted to intervene only for the purpose of getting an order from the district court that stated that we had validly opted out of the class. We were concerned about making sure that we protected our opt-out rights in every way that we could. That's where we started in November of 2015. We had filed these separate lawsuits. We wanted those lawsuits to proceed, but we were concerned that we have an order from the district court stating that we had validly opted out of the class. We filed a November 4, 2015 notice with the district court. I think we gave an explanation and gave case numbers for the other three lawsuits we had filed. And stated in that notice that we were giving notice of our intent to opt out of any class that might be certified by Judge Miller. And the court chose not to grant your request, is that correct? Well, the court didn't. We subsequently filed Judge Smith a motion to intervene asking that the court order that that November 4, 2015 notice was a sufficient election to opt out of the class. What did the court do with what you requested? The court denied that motion to intervene without prejudice, saying that it was premature because the court had not yet approved of the notice of class certification that would be sent out to the class members. We had also, in that first motion to intervene, objected to the requirements that were being proposed by the plaintiff's counsel with respect to the opt-out requirements. And in that notice, they had included certain requirements, which included providing a notarized signature, providing, in particular, property name and well-name information. And we were, in the alternative, in the event that Judge Miller did not accept our November 2015 notice as valid, in the alternative, we were asking that the court consider and the court not include these onerous opt-out requirements in the notice of class certification that was going out to the members of the class, and that those not be permitted because they weren't necessary for class members to be able to express their intent to opt out of the class. On June 2nd, 2016, I believe it was, the district court, Judge Miller, denied that first motion to intervene without prejudice, saying it was premature, as I said before. So at that point, there was a denial of our motion to intervene without prejudice. Then in August of 2016, Judge Miller approved the proposed form of class certification notice to go out to the class members, and included the requirements to provide a valid opt-out of the well-name identification to which we had objected, the property name to which we had objected, and set a deadline of November 16th, 2016, for class members to submit their timely opt-out request. So at that point, we began the process of assisting our clients in submitting timely opt-out requests to the class administrator. And we did, we submitted a timely opt-out request for each of these 43 class members, and these opt-out requests were mailed to the class administrator. Each of those opt-out letter requests was signed by each of these 43 class members, and they each stated that they were writing to give notice that their request seemed to be excluded from the Connie Jean Smith versus Seiko class action, and had decided to pursue my own royalty underpayment litigation against Defendant Seiko Inc. and its affiliated entities. Did these notices conform to the August 16th procedures that were outlined? It conformed with respect to providing a letter requesting to be opted out from the class. Well, was it in complete conformance with the class? It was not, for 33 of the 43 class members that we're talking about, it was in conformance with the exception of the well identification requirements. And for those 43, for those 33 of the class members that we're talking about, it did not include the, specifically the well identification requirement, but it did state that the particular class member was seeking to opt out for all wells in which they had an interest. So help me to see if I'm grasping this. The main gravamen of your argument, or the essence of it, is that the court's denial of the opt-out based on the absence of those more specific descriptions of the well was an abuse of discretion. That's correct. That basically, there's a number of cases we've cited in our briefs, cases from the Second Circuit, the Fifth Circuit, the Tenth Circuit, in which they've said that a class member who provides a reasonable indication of his intent to opt out, that that submission, that opt-out request, should be considered as valid. And the three cases we've cited, in addition, we also cited to this court's decision, in Enright General American Life Insurance Company, which is 268 Fed 3rd 627 634-35, where the court didn't perhaps expressly take up, you know, what's the standard for determining the validity of a class member's opt-out request, but it did cite, with approval, the decision of Council on Social Work Education, Inc., which is 105 FRD, Northern District of Texas, 1985, where the district court adhered to the established standard that any written evidence of the desire to exclude oneself should suffice, and rejected the argument that a class member's failure to provide requested technical information can invalidate a class member's timely request to opt out of a certified class. And that was a case, Judge Smith, where the Eighth Circuit affirmed a district court's decision to permit their attorneys to sign the opt-out letter request on behalf of the class members. But here, every single one of these 43 class members signed their letter request. There's no question about the fact that they signed. The vast majority of them met every requirement except for the well-identification requirement that was imposed by the district court. But certainly, in this case, what you have in reality is not just a reasonable indication of these 43 class members' intent to opt out of this class action, but absolutely an unequivocal request to opt out of this class action. And that started in November of 2015, when they gave notice of the fact that they had filed separate royalty underpayment litigation. And so then, after all this occurred, the court, and after the letter requests, Judge Smith, were submitted, I know my time's running a little short, but after they were submitted, the defendant, the SECO defendants, they actually filed a motion asking for some of the opt-out letter requests that had been submitted by various class members to be rejected. But they did not object to any of these 43 class members' opt-out letter requests, nor did the plaintiffs. So we have a situation here where there were a bunch of objections to some opt-out letter requests from some other class members other than these 43. SECO didn't object to these. The plaintiffs didn't object to these. In fact, said that any class member who had given a reasonable indication of an intent to opt out of the class, that they should be excluded from the class. Notwithstanding that, in January of 2017, Judge Miller enters an order that effectively says that any class member who has basically not complied with the property name, well name requirement, that they should be excluded, or that they should be included in the class, and that their opt-outs should be rejected. Why was it unreasonable to have that requirement for the identification of the wills? Well, for several reasons. Is that an abuse of discretion to have a requirement? Well, I think it's an abuse of discretion because, number one, there was no reason for it. The well name identification information, Judge Smith, is information that the royalty owners, these class members, get from the SECO defendants. That's their only source of getting this information. They would get the information from the SECO defendants. They don't have any independent information other than what they get from the SECO defendants with respect to the well identification. Did Judge Miller express some concern that there were multiple opt-outs for persons by multiple lawyers, and that he was just concerned that he needed to get a handle on who actually was making which opt-out requests, and under what circumstances, and that all of this information was really just about trying to make sure that it's the right person, the right well, the right property? Well, I think in his January 2017 order, Judge Erickson, I think fairly stated that he had concerns about some of the other opt-out methodologies that were being pursued. And so I think where Judge Miller ultimately came down as a result of all that confusion, not so much with these 43 requests. I understand it's not necessarily with these 43, because what happened is he looked at this whole big mess, and he said, okay, here are the rules that are going to apply to everybody, and I'm not really having any exceptions because now I will be certain of what we've got. Is that what happened? Yeah, I think in fairness that is what happened. I think that's sort of what happened. It was after that order that we filed an additional motion to intervene seeking to have the judge enter an order. We filed, I think it was in March 30, 2017. We filed this second motion to intervene asking Judge Miller to rule that these letter requests that we had submitted, which, you know, were good faith effort. A lot of these people don't keep the well information. They didn't have it. I mean, we had 150 other royalty owners that we represented that had the well information who are obviously they're still pursuing their separate litigation. But for these 43, what the reality is a lot of these royalty owners don't keep the well information. They don't have it. Yeah, I practice law in oil country. I get it. There's just people that keep no records at all. They just make sure the checks show up. But we did the best we could, and the frustration of it is that this requirement is completely unnecessary. I mean, it's ridiculous. The defendant, the SECO defendants, have that well information, and the only reason that royalty owners have any information about it is based on information they get from the defendant. So there's no reason to have the well identification information. So what relief are you seeking? You want an order? What relief are you seeking at this point? Judge Collinson, three things. I mean, the court denied our second motion to intervene. Denied it on May 24th. So what relief are you seeking? A reversal of the denial of the motion to intervene and an order that states with instructions to the district court that the district court should accept as valid the letter requests that were submitted and signed by each of these class members in the first appeal. And so we appealed, timely appealed, from the denial of the motion to intervene. The court did not consider whether any of the requirements for intervention had been satisfied, and the court didn't. And what did the court say on the second motion to intervene about why? He said, well, I've already ruled in the January 2017 order that you've got to have all these requirements. That the process was correct. Yeah, and that I'm not. He didn't appeal from the denial of the motion to intervene to challenge the process. You let that go. Let that go. It was without prejudice. And if you look at, among other things, we explain in our brief why that was legitimate, but also there was an earlier Smith v. Seiko case, and I think your Honor was on the panel, where they had a similar without prejudice denial of the motion to intervene. You may recall that. It's 865 Fed 3rd 1021, where there was a without prejudice, and that portion of the intervention was considered to be a non-final, not an appealable order. You've got the same situation here, because it was a denial without prejudice. So the argument that's being advanced by the Seiko defendants that that should be the starting date for our obligation to appeal is simply contradicted by that. So you're saying he should have let you intervene on the second motion to litigate whether the opt-out letters were adequate. Were valid. That's correct. Valid. And since he wouldn't let you intervene, you want us to order that you should have been allowed to intervene. If we do that, why should we decide in the first instance whether the letters were valid? Well, it's a fair question, Judge Colleton. But here we are in a case that's now been tried. Well, I know. It's been tried. Stick with the microphone. So you want us to say, basically, that you're opted out. The case has been tried. You're not bound by the judgment, and your 43 people can proceed on their own. That's correct. Which you want us to do. That is correct. And if we just tell the district court to rule on the letters, I suppose he might allow some. He might not allow any. Well, it's a fundamental similar question. Is this case law from the other circuits that says if the class member provides a reasonable indication to opt out, that should be considered as valid? Should the Eighth Circuit adopt that? There is guidance that's needed here, I will tell you. I believe that this issue is getting abused. I think that the rule says, I think we talked about the Rule 23 requirement, what it says, that it ought to be a simple requirement that the class member has a right to opt out, and that that's just a simple request, and that you don't put these add-ons, add-on requirements, as part of the opt-out request. And we talked about what the, I think it's called the Federal Judicial Center has given guidance on this, that it ought to be a very simple, non-onerous requirement that's imposed on the class member. And every circuit that's considered this issue has adopted this rule of law that if an opt-out letter request is timely submitted and gives a reasonable indication of the class member's intent to opt out of the class, that that should be considered as a timely opt-out request, notwithstanding a failure to provide, to comply with some additional technical requirement that may have been approved by the district court with respect to the opt-out notices. And so that's really, I mean, it's the essence of what we're asking the court to do, because we try to make every effort we can think of to get these people opted out of the class. Do you represent both the ARNET 1 and the ARNET 2 people? Yes. Yeah. Yeah. The appeal numbers are 17-2378 and 17-3443. Well, now, on the 3443, you're appealing a later, let's see, the March order is not at issue there, right? That is correct. We're appealing from essentially the, our position is that we can appeal without having obtained intervention under the Scartoletti decision. Yeah, we'd have to extend Devlin against Scartoletti. That is true. And our position is that's not an issue that the Eighth Circuit has specifically decided, as we talked about in the briefs. Or any other circuit, really. I mean, obviously, that's an issue, but our position is, if you look at the rationale of Devlin versus Scartoletti, that it's an appealable order. Obviously, in effect, that only affects really three of the class members. But we think it's an alternative basis. If, for some reason, there was some issue about the intervention, on an alternative basis, we appealed timely from the final judgment. In other words, the final judgment was entered in the case, and then we appealed at that point. Mr. Barton, your time has expired. I agree. Unless there are other questions from the panel. Thank you, Your Honor. Mr. Kramer? Thank you. Mr. Kramer, if you go straight to the matter, what was the justification for requiring the detail that was required in the opt-out request? Specifically with regard to the well information? Yes, precisely. Thank you, Judge Smith. First of all, the well information, we didn't pull that out of thin air. There are prior oil and gas cases, including ones I've been involved in, other attorneys have been involved in, where that requirement was ordered by the district court to notice. Primarily, Judge Smith, that requirement allowed us to take the information from owners that requested exclusion and carve them and their interest in certain wells out of our damage model that was presented at trial. But why did you need the well information in the opt-out in order to exclude those people? In order to identify all the wells that all of those particular royalty owners were in so that we could carve them out of our damage model. But didn't you have the well information? I mean, if you had a well owner who says, I want to opt out, don't you know what wells that person is associated with? To a certain extent, Your Honor, but I don't think that we necessarily knew all of the wells that each of these particular royalty owners were in. Well, I'm confused because the counsel says, well, the owners had to get the well numbers from you. If that's true, then you must have had it all. Perhaps from Southwestern, Your Honor, but we believe that the district court acted well within its discretion to reject the exclusion request of the appellants given the circumstances. Just go back, if you can, and explain further why that information was necessary. That's the part I want to make sure we understand. Why you couldn't sort those people out just based on the opt-out letters that were submitted? Well, part of it was confirmatory because we had the data that we received, Judge Colleton, was like two terabytes of data. Drilling down to figure out each particular well that a royalty owner was in to exclude themselves was not the easiest task, I will say. Hold on. Are you saying that you do not have a program that identifies royalty holders by name and address? So if, in fact, you get something from somebody that says, my name is John W. Smith, and I reside at such and such address, that you do not have a way of identifying which well interest that person has? I mean, is it possible that there's an oil company that operates with that little sophistication? Well, I'm not the oil company, Judge Erickson. I was given information from the oil company that was produced to me. Yeah, but certainly the oil company would say, here's a list of the royalty holders you say they want out. Here's their addresses, and they say they want out on every well. They've got to know who they're paying. I mean, I get where there's fractional interest in all kinds of wells and that there may be 100 people or sometimes 200 people in on a well because it could be a large pooled unit, and I get that. But at the end of the day, somebody's got to have a record of who they're paying all the royalties to. Correct, correct. And it primarily was needed to confirm what we had in the data, if that makes sense. Well, it makes sense, but it doesn't make it necessary. Well, we believed it was necessary in this instance, Your Honor. Well, you never objected, right? I'm sorry? You never actually objected. The judge imposed this order without objection by either party, right? I mean, wasn't the official response is those who opted out have opted out, and then the judge says we need this detailed information? Correct, correct. You never asked for that information, right? Well, we proposed the notice procedures, Judge Erickson, correct. We did. You proposed the procedures, but you never said that all the information was necessary until later, right? Well, I don't believe – Wouldn't you have objected at the time if you'd have thought that you had insufficient notice to know who the royalty holders really were and what their well interests were? Well, that's correct, Your Honor. We did take the position that Judge Miller – we encouraged the district court to exclude royalty owners who reasonably indicated a desire to opt out and noted the district court's discretion to disregard violations of notice procedures and finding excusable neglect to comply or find substantial compliance, and hundreds of owners, including many that were represented by Mr. Barton, were able to follow the district court's opt-out instructions, and we believe that the district court acted within its discretion given those circumstances to reject the exclusion request. About what percentage of the opt-out group is represented by the 43? Out of the total number of royalty owners that opted out, Judge Miller? Yes. I think that's a very small percentage. I'm not off the top of my head. I want to say there was 200 to 300 that opted out, so not a significant amount. 25%? I think it's less than that, Judge Collison. Less than that. Yeah, but we briefed the technical aspects of the opt-out requirements that these interveners are complaining about, and I understand that Mr. Street will be addressing those in a little bit more detail in a few moments, and to avoid repetition and hopefully shorten this proceeding, we'll defer to our briefing and cede any remaining time to Mr. Street, but one point I do want to address before sitting down is any argument that intervention should have been allowed based on class counsel's inadequacy. We did what we should have. The district court repeatedly affirmed our adequacy, and this court need look no further than what Judge Miller said at the end of trial, commending us and our work to our client. That's not something a judge says if class counsel's inadequate. We were adequate, but what we have here is Southwestern is talking out of both sides of their mouth. They're irreconcilable statements, and that's been a pattern throughout this litigation. The start of trial did not end Southwestern's attack on the adequacy of Ms. Smith and her counsel. It was just the beginning, because throughout trial, they gave the jury the impression that Ms. Smith and her counsel were hurting the class, that we weren't adequate counsel, and it was only after they secured a favorable judgment by telling the jury that Ms. Smith and her counsel were hurting the class that they changed their mind, and now say the district court got it right on our adequacy. If you grant intervention, do it for the right reasons, but not because we were inadequate. If there are questions, any more questions, I'll be happy to address them, but I appreciate the opportunity to stand before this court. Thank you, Mr. Cramer. Mr. Street? Good morning. May it please the court, Aaron Street, representing the Appalese, the Southwestern companies. I'll focus my argument principally this morning, of course, subject to the court's questions, on the Arnett One appeal that's principally been discussed so far, but of course, I'm happy to answer questions about any of the other intervention questions. On the Arnett One appeal that Mr. Barton has argued, I want to first emphasize the untimely nature of the Arnett One appeal. Arnett One appellants are essentially seeking to use a successive intervention to extend the appellate 30-day time clock, and their successive intervention motion raised all of the same arguments that were raised in their earlier intervention motion that Chief Judge Miller denied back in January 2017. And all you have to do is look at two things to know that this appeal is untimely. Number one, you just have to read Chief Judge Miller's order in May. It's about three pages long. He says, I already rejected all of these arguments back in January. Then you just have to look at what the Arnett One appellants told this court on a petition for writ of mandamus in February 2017. So right after Judge Miller denied the initial intervention request, Arnett comes to this court and says, we need a writ of mandamus because Judge Miller committed clear legal error in, quote, rejecting the opt-out requests. So they're coming into court this morning and saying,  he didn't do that until May. That's not what they were telling this court in February. In addition, all you have to look at, I'll add a third point you could look at to confirm that this is... Are you talking about the Arnett Two appeal now? No, I'm talking about Arnett One. Because Arnett One, right, their theory is Arnett One is timely only if you look at it as an appeal from the May 2017 order. We say that in substance, the Arnett One appeal is really an appeal from the January 2017 order. Because if you look at that order, it actually addresses in great detail all of the same challenges to the opt-out procedures that they're raising now. And indeed, they came into this court again just one month after that January 2017 order and characterized the January 2017 order as having committed clear legal error because it rejected their opt-out requests. But wasn't that the denial without prejudice, the first one? It was formally noted as a denial without prejudice, but Judge Miller went on to address in great detail all of the same opt-out arguments that counsel is raising this morning. And he did that in such a way that Arnett One immediately came into this court and said, that January 2017 order rejected our opt-out requests. We need immediate relief. But that petition was denied. And we had the other case that was pointed out earlier where we said there was no jurisdiction to appeal from a denial without prejudice. And so why isn't the January order unappealable? Well, I don't think it's unappealable. Well, I guess a couple reasons. First of all, Arnett Two is trying to appeal that order now. Now, we say it's untimely. But I think their own actions show they think they can appeal the January order, that it wasn't some sort of just... Well, they really didn't. I mean, a petition for mandamus is not an appeal. A petition for mandamus is for a writ supervising a district judge or a lower court official for failing to act in conformity with law when you have no final or appealable order to take up. I'm sorry, Your Honor. I may have been unclear. When I said they are now seeking to appeal the January order, I was referring to the separate Arnett Two appeal. The only order they claim to be appealing is the January 2017 order. So they're saying two things. They're saying on Arnett One, oh, we couldn't have appealed that order. That was just without prejudice. Well, I understand the inconsistency, but there's still a question of which is correct. I mean, if it's not appealable, maybe Arnett Two cannot appeal because either it's not a final order or they're untimely. It's clearly untimely. It's our position that it was a final order. And I don't believe the court's earlier opinion said the mere fact that something is denoted as being without prejudice. I mean, I believe it was actually a denial as moot, is what he called it. And that's a final judgment on the intervention request. He says, sure, you can try to intervene again, but he denied intervention at that time. But then again, he went on and finally resolved the legal issues that they're arguing here this morning. And again, I don't think I need to repeat all of the reasons. I think that that's a final order that could have been appealed. But I will, if there are no other questions. So your point is that order could have been appealed and therefore the later appeal is untimely? Correct. And I think that's the teaching of this court's opinion in the Green Forest case that we cite in our brief. Their argument, their principal argument, as I understood it, was that the circumstances had materially changed between the time of the January order and the May order. And our position on that is there's no material change in the circumstances. Just read Judge Miller's May order. He says, I've already dealt with all of this, a three-page order. And again, they're appealing that order and they correctly represented on their mandamus that that issue was finally resolved. If there are no other questions on timeliness as to ARNET 1, I would briefly turn to the opt-out procedures. And we agree with Mr. Kramer that those were within Judge Miller's discretion. And I would add an additional reason to what was discussed by Mr. Kramer. And that is what Judge Erickson referenced earlier, that Judge Miller observed what he called, quote, unique circumstances in this case. That there were lawyers, there were multiple lawyers trying to opt out the same client. And that happened time and again. And so I believe one thing he was trying to do with the well numbers was to make sure that this was actually the individual opting out, the individual who has access to the well information and not some lawyer who might swoop in and attempt to opt out multiple individuals who the lawyers may or may not have access to that information. I would also mention that... Why is it a problem here where, as I understand, these 43, the owners themselves were the signatories to the opt-out request? That's right. And I think in this particular instance, you did have signatories, but they knew the requirement back in January. And this is in Chief Judge Miller's order. He says, these individuals in the Arnett group, they knew my opt-out procedures. They had counsel, same counsel they have now, and yet they declined for whatever reason to comply with the well name and number request. So it was more of, I think, a concern broader about... Was there ever really a, quote, a fight or a discussion before the court about including that particular requirement in the opt-out procedures? Or was it just simple noncompliance? I think it was a simple noncompliance. I mean, that question was briefed in respect to the motion to intervene that was denied on January 2017, whether that was a reasonable requirement. And Mr. Kramer mentioned, and I think it bears... So are you saying the first time it was raised to the district court that the requirement was unreasonable was after they were excluded? Or after they were not allowed to intervene? They were not allowed to intervene. And then they submitted... Then they again... I'm sorry. The requests were... I'm sorry. The procedures... Let me back up. The procedures were set. They were clear. The opt-outs were submitted. And they moved to intervene. And that was denied. And the judge says, they knew what my procedures were. They had counsel. I've got these unique circumstances that require me to put the notarized signature requirement and the well name and number requirement. And he goes on to say, these are not onerous requirements. The substantial majority of individuals who sought to opt out were granted the request to opt out. This is information... This is not just a matter of folks throwing away their royalty check stubs. This information was easily available on the website. And I would say that Chief Judge Miller went out of his way to accept requests that were in substantial compliance with the opt-out procedures. He didn't slavishly adhere to the letter of what he ordered. He accepted requests where the royalty statement was stapled to it. It didn't have to go through and name all of the particular wells, so long as they stapled to it. Then I believe Judge Miller knew that was coming from the individual and not from a lawyer. What were the unique circumstances, again, that prompted the requirement of the well numbers? Well, it was the fact that multiple lawyers were opting out particular individuals. And you can see that on page 15 of his January order. And, in fact, he does mention that there was one motion to intervene listing a person called O'Neill represented by Barton. And then there was another attorney claiming that she represented Ms. O'Neill. So even in this particular case... That's why you would want the notarized signature from O'Neill. But what's that have to do with the well number? Well, because the royalty owner would be the one who would know which wells that they owned, and that was an additional belt and suspenders verification that this was the royalty owner's intent and not the... Yeah, I don't know if you want to use belt and suspenders, though that's often used to indicate something that's not really necessary. I think it was something that Judge Miller, who was familiar with the players in the case, all of the on-the-ground action, felt it was necessary. So I'm certainly not using that in that sense of redundancy. I didn't think you were. Thank you for catching me on that. And I do think... I have one more question on timeliness. I'm sorry to go out of order, but I think isn't there a theory that on the second order, that was the first time they could litigate whether deviations from the procedure were permissible? And so there's a change in what they're trying to litigate between the procedure itself and the permissibility of certain deviations. What do you say to that? That is their position, but in the January order, the judge considered requests for deviations, and he said, you know, yes, I understand there are people who have submitted notarized requests, but they willfully failed to comply with my well number requirement, and I'm not going to allow them to opt out. So he rejected those questions in the January order. So you think that had already been addressed? Yes, and that was certainly the position on the petition for writ of mandamus. And I would just say, timeliness... Very quickly wrap up to say that timeliness dooms all of the appeals that are before this court. The Wyborne appeal is similarly situated to the Arnett II appeal in the sense that both of those notices of appeal are untimely on their face more than 30 days after the orders that they purport to appeal. So both of them are asking this court to dramatically extend Drevlin v. Scardelletti in a way that this court has questioned is appropriate in previous cases, and in a way that would cause the Devlin narrow exception to completely swallow the general rule that you have to appeal denials of motion to intervene within 30 days. So we don't think the court will even have to reach the counsel adequacy question or the merits of the particular opt-out procedures in this case because all of the appeals that present those questions are untimely. And if there are no further questions, I'll thank the court. Thank you, Mr. Street. Mr. Barton, I believe you used up all of your time originally, but I would be amenable to giving you a minute if there is something you heard that you feel would be helpful to us to respond to. I do on the two things. One, we filed the first motion to intervene, and the judge in June of 2017 denied it without prejudice and said because he hadn't determined at that point what the requirements should be on the class certification notice. In other words, the plaintiffs had proposed all these requirements, but he hadn't decided what they were going to be. So he denied it without prejudice and said that it was premature.  Which they're saying was the same as what we asked for later. It's not accurate. We didn't file another motion to intervene until the one that we filed in March of 2017. That was after we had then gone ahead because the court had decided I'm going to put in all these requirements. We didn't file any other motions to intervene until March 30, 2017. At that point, we had already submitted the opt-out request. What we said is we asked in that motion to intervene for the court to determine that the opt-out letter request we made, although they didn't provide the well information, that they were still valid because they reasonably indicated the class member's desire to opt out of the certified class. We cited the case law that we've talked about from the Second Circuit, Fifth Circuit, Tenth Circuit. There's never been any circuit that's said otherwise. That if the class member provides a reasonable indication of its intent to opt out and does so on a timely basis, that that should be accepted as valid. The context was completely different than the earlier motion to intervene, which had been denied without prejudice in any event. Council keeps talking about the January 2017 order. We didn't file any other motions to intervene other than the two that are here. We timely appealed from the second motion to intervene, which was a completely different context than the first, as Judge Colleton was inquiring about, and did so on a timely basis because that order came out on May 24, 2017. We filed our notice of appeal within 30 days of that. The motion, the appeal from the denial of the motion to intervene was timely, and the appeal is timely in this case. What do you mean when you say Council keeps talking about the January order? What do you say about the January order? The January order, Judge Colleton, we weren't a party to the case because our original motion had been denied. Our motion to intervene had been denied long before. You're saying the January order is not an order on your motion? No, it wasn't an order on our original motion to intervene. The original motion to intervene was denied before the court ever issued. The original motion was denied before the court ever decided what the class certification notice should be, what the opt-out requirement should be. And then, later on, after- Who are the 248 people who were seeking to intervene in the January order? That didn't include the 43? It included the 43, but there's nothing in the January order that was a ruling on the motion to intervene. That motion to intervene had been denied as premature before. Well, it says right at the beginning of the order, the motion to intervene on behalf of 248 individuals is denied. So there must have been some motion to intervene pending. Well, perhaps at that point the district court presented it that way, but there was a motion to intervene that was denied without prejudice prior to that. And in any event, we saw it, and we hadn't renewed the motion to intervene. I mean, it was denied without prejudice, and as I recall, we hadn't renewed it. But in any event, later on, we asked the district court to consider whether or not the opt-out letter request which we had submitted, which admittedly did not satisfy the well-identification requirements for the reasons I've mentioned, whether or not those letter requests should nevertheless be considered valid based upon the case law from the Second, Fifth, and Tenth Circuits, that any reasonable request that reflects an intent to opt-out should be accepted as valid. Well, now, just so you know, the heading in that January order says renewed motion to intervene on behalf of 248 individuals. Okay. Well, perhaps it was, but I— I just wanted to clear up that your clients were parties to the— Apparently, yes. But at that point, I mean, the court was making decisions at that point about, you know, what was a valid and not a valid opt-out request, and we were trying to seek relief from that. So we filed the later motion to intervene for the purpose of getting the court to look at the issue of whether or not, even though we didn't comply with every single one of these requirements, that those opt-out requests were nevertheless valid because they expressed a reasonable intent to opt-out of the class. That hadn't been addressed in the January 2017 order, that issue. Thank you, Mr. Cramer. All right. Thank you. The court wants to thank all counsel for your presence this morning. The argument you provided to the court in the briefing that's submitted will take that case under advisement and move on to the next related matter.